**No. 26-2626**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

**IN RE JUUL LABS, INC. ANTITRUST LITIGATION**

On Rule 23(f) Interlocutory Appeal from the United States District Court for the Northern District of California, San Francisco Division
No. 3:20-CV-02345-WHO
The Honorable William H. Orrick

**ANSWERING BRIEF OF INDIRECT PURCHASER AND INDIRECT RESELLER CLASS PLAINTIFFS-APPELLEES**

Robin F. Zwerling
ZWERLING, SCHACHTER &
ZWERLING, LLP
41 Madison Avenue
New York, NY 10010
Telephone: (212) 223-3900

Betsy C. Manifold
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599

*Counsel Indirect Purchaser Plaintiffs-for Appellees*

Robert N. Kaplan
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: (212) 687-1980

C. Andrew Dirksen
CERA LLP
529 Main Street, Suite P200
Boston, MA 02129
Telephone: (857) 453-6555

Solomon B. Cera
CERA LLP
50 California St. Suite 1500
San Francisco, CA 94111
Telephone: (415) 777-2230

*Counsel for Indirect Reseller Plaintiffs-Appellees*

# CORPORATE DISCLOSURE STATEMENT

## INDIRECT PURCHASER PLAINTIFFS

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Indirect Purchaser Plaintiffs-Respondents Napht Inc., Noor Baig, Inc., Rose and Fifth, Inc., Sofijon, Inc. and Somerset Party Store, Inc. by and through the undersigned counsel, hereby certify that no publicly-held corporations own 10% or more of their outstanding stock.

*/s/ Elana Katcher*
Elana Katcher
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, NY 10022
(212) 687-1980
rkaplan@kaplanfox.com
ekatcher@kaplanfox.com

*/s/ C. Andrew Dirksen*
C. Andrew Dirksen
**CERA LLP**
529 Main Street, Suite P200
Boston, MA 02129
(857) 453-6555
cdirksen@cerallp.com

*Counsel for Indirect Reseller Plaintiffs-Appellees*

# TABLE OF CONTENTS

INTRODUCTION ........ 1

STATEMENT OF ISSUES ........ 1

COUNTERSTATEMENT OF THE CASE ........ 2

SUMMARY OF ARGUMENT ........ 7

ARGUMENT ........ 8

I. THE MULTISTATE CARTWRIGHT CLASSES WERE PROPERLY CERTIFIED ........ 8

A. The Cartwright Act Governs the Out-of-State Sales Here Due to In-State Conduct ........ 9

1. Defendants' Extraterritoriality Argument Misconstrues Cartwright Act Liability ........ 9

2. The Cartwright Act's Language Supports Application to Out-of-State Sales ........ 10

3. Legislative History Favors Extraterritorial Application ........ 11

4. Precedent Forecloses Defendants' Extraterritoriality Argument ........ 12

II. CALIFORNIA CHOICE-OF-LAW MANDATES THE APPLICATION OF THE CARTWRIGHT ACT TO OUT-OF-STATE PURCHASES ........ 14

A. Defendants Identify No Error in the Conflict of Laws Analysis ........ 14

B. Defendants Fail to Apply the Law to the Facts of This Case ........ 16

1. Differences in How States Apply *AGC* Do Not Create Material or True Conflicts ........ 18

2. Application of the *AGC* Factors to the Facts Supports Certification ........ 19

3. States That Have Repealed Illinois Brick through Consumer Statutes Belong in the Cartwright Class ....................................24

III. THE DISTRICT COURT DID NOT ERR IN FINDING THAT COMMON ISSUES PREDOMINATE ............................................32

A. California Choice-of-Law Rules Allow Courts to Apply Different States' Laws to Different Issues in the Same Case...35

B. Variations in Enhanced Damages Rules Do Not Swamp Common Issues and Do Not Defeat Predominance. ................37

IV. CERTIFIED CLASSES MAY INCLUDE UNINJURED CLASS MEMBERS ........................................................................40

CONCLUSION ..........................................................................................42

# TABLE OF AUTHORITIES

**Cases**

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
190 F.3d 1051 (9th Cir. 1999) ....................20

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ....................40

*Associated General Contractors of California, Inc. v. California State Council of Carpenters* ("*AGC*"), 459 U.S. 519 (1983) .................... 15, 18

*AT&T Mobility LLC v. AU Optronics Corp.*,
707 F.3d 1106 (9th Cir. 2013) .................... *passim*

*Bernhard v. Harrah's Club*,
16 Cal. 3d 313 (1976) ....................29

*Bluegreen Vacations Unlimited, Inc. v. Timeshare Termination Team, LLC*,
No. 20-CV-25318, 2021 WL 2476488 (S.D. Fla. June 17, 2021)....................25

*Bruno v. Eckhart Corp.*,
280 F.R.D. 540 (C.D. Cal. 2012).................... 16, 17

*Campbell v. Arco Marine, Inc.*,
50 Cal. Rptr. 2d 626 (1996) ....................13

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*,
169 So. 3d 164 (Fla. Dist. Ct. App. 2015)....................25

*Castano v. American Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) ....................40

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ....................40

*Chen v. Los Angeles Truck Centers, LLC*,
7 Cal. 5th 862 (2019) ....................14

*Ciardi v. F. Hoffmann-La Roche, Ltd.*,
436 Mass. 53 (2002) .......................................................................................27

*Clayworth v. Pfizer, Inc.*,
49 Cal. 4th 758, 783 (2010) ................................................................ 22, 26, 33

*Comes v. Microsoft Corp.*,
646 N.W.2d 440 (Iowa 2002) ..........................................................................36

*Diamond Multimedia Sys., Inc. v. Superior Ct.*,
19 Cal. 4th 1036 (1999) .......................................................................... 11, 29

*DZ Rsrv. v. Meta Platforms, Inc.*,
96 F.4th 1223 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1051 (2025) ........... 37, 38

*F.T.C. v. Cement Inst.*,
333 U.S. 683 (1948).........................................................................................24

*Forcellati v. Hyland's, Inc.*,
No. CV 12-1983-GHK MRWX, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ..17

*Foster v. United Airlines, Inc.*,
No. 3:19-CV-02530-JD, 2023 WL 3102570 (N.D. Cal. Apr. 25, 2023).............35

*Gordon v. Reynolds*,
10 Cal. Rptr. 73 (Cal. App. 1960)....................................................................29

*Hanover Shoe v. United Shoe Mach. Corp.*,
392 U.S. 481 (1968).........................................................................................34

*Hernandez v. Burger*,
102 Cal. App. 3d 795 (1980) ...........................................................................29

*Huch v. Charter Commc'ns, Inc.*,
290 S.W.3d 721 (Mo. 2009) ............................................................................26

*Humana Inc. v. Bausch Health Cos.*,
No. HG21087971, 2023 WL 4552005 (Cal. Super. July 5, 2023) ............... 22, 23

*Hurtado v. Superior Ct.*,
11 Cal. 3d 574 (1974) ........................................................................ 33, 35

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977)..........................................................................1, 27

*In re Aftermarket Filters Antitrust Litig.*,
No. 08 C 4883, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009)..............................21

*In re Capacitors Antitrust Litig.*,
No. 17-MD-02801-JD, 2020 WL 6462393 (N.D. Cal. Nov. 3, 2020) ................13

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
516 F. Supp. 2d 1072 (N.D. Cal. 2007)..........................................................22

*In re Flash Memory Antitrust Litig.*,
643 F. Supp. 2d 1133 (N.D. Cal. 2009)...................................................... 19, 23

*In re Graphics Processing Units Antitrust Litig.*,
540 F. Supp. 2d 1085 (N.D. Cal. 2007)..........................................................19

*In re HIV Antitrust Litig.*,
No. 19-cv-02573-EMC, 2022 WL 22609107 (N.D. Cal. Sep. 27, 2022)..... 13, 31

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ........................................................................24

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
383 F. Supp. 3d 187 (S.D.N.Y. 2019) ...........................................................22

*In re Korean Ramen Antitrust Litig.*,
No. 13-cv-04115-WHO, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017) .... 8, 13, 16

*In re Lithium Ion Batteries Antitrust Litig. ("Batteries I")*,
No. 13-MD-2420 YGR, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014)......... 20, 22

*In re Lithium Ion Batteries Antitrust Litig. ("Batteries II")*,
No. 13-MD-2420 YGR, 2017 WL 1391491 (N.D. Cal. Apr. 12, 2017) 13, 16, 18

*In re Optical Disk Drive Antitrust Litig.*,
No. 3:10-MD-2143 RS, 2016 WL 467444 (N.D. Cal. Feb. 8, 2016)........... 16, 18

*In re Packaged Seafood Prods. Antitrust Litig.*,
332 F.R.D. 308 (S.D. Cal. 2019), *aff'd sub nom.*, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) 9, 16, 19, 31

*In re POM Wonderful LLC Mktg. & Sales Practices Litig.*,
No. MDL 2199, 2012 WL 4490860 (C.D. Cal. Sep. 28, 2012) ..........................17

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig*.,
335 F.R.D. 1 (E.D.N.Y. 2020).........................................................................39

*In re Static Random Access memory (SRAM) Antitrust Litig.*,
264 F.R.D. 603 (N.D. Cal. 2009)................................................................ 21, 39

*In re TFT-LCD (Flat Panel) Antitrust Litig. ("TFT-LCD I")*,
586 F. Supp. 2d 1109 (N.D. Cal. 2008)....................................................... 19, 39

*In re TFT-LCD (Flat Panel) Antitrust Litig*. ("*TFT-LCD II*"), No. 10-05625 SI,
2013 WL 6327490 (N.D. Cal. Dec. 3, 2013)........................................... 9, 28, 30

*In re Zetia (Ezetimibe) Antitrust Litig.*,
No. 2:18-MD-2836, 2020 WL 5778756 (E.D. Va. Aug. 14, 2020),
*report and recommendation adopted*, No. 2:18MD2836, 2021 WL 3704727
(E.D. Va. Aug. 20, 2021)................................................................................37

*J. P. Morgan & Co. v. Superior Ct.*,
113 Cal. App. 4th 195 (2003) .........................................................................13

*Jackson v. Tesla, Inc.*,
772 F. Supp. 3d 1111 (N.D. Cal. 2025)....................................................... 32, 35

*Kearney v. Salomon Smith Barney*,
39 Cal. 4th 95 (2006) .......................................................................... 17, 33, 37

*Keilholtz v. Lennox Hearth Prods. Inc.*,
268 F.R.D. 330 (N.D. Cal. 2010).....................................................................17

*Kelley v. AW Distrib., Inc.*,
No. 20-CV-06942-JSW, 2023 WL 3569996 (N.D. Cal. May 18, 2023)............36

*Laboratory Corporation of America Holdings v. Davis*,
605 U.S. 327 (2025)..........................................................................41

*Mazza v. American Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir. 2012) (overruled on other grounds by Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC, 31 F.4th 651 (9th Cir. 2022)) .................................................................................. passim

*McGlinchy v. Shell Chemical Co.*,
845 F.2d 802 (9th Cir. 1988) .............................................................13

*Nev. Recycling & Salvage, Ltd. v. Reno Disposal Co.*,
423 P.3d 605 (Nev. 2018)....................................................................18

*Offshore Rental Co. v. Cont'l Oil Co.*,
22 Cal. 3d 157 (1978), *holding modified by I. J. Weinrot & Son, Inc. v. Jackson*, 40 Cal. 3d 327 (1985) ............................................................ 25, 27

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ................................................. 38, 41, 42

*Parkinson v. Hyundai Motor Am.*,
258 F.R.D. 580 (C.D. Cal. 2008)..........................................................17

*Pecover v. Elec. Arts Inc.*,
No. C 08-2820 VRW, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ................28

*People v. Ashford Univ., LLC*,
100 Cal. App. 5th 485 (2024) ...............................................................11

*Perry, Tr. for Sherrell v. Beltrami Cnty.*,
520 F. Supp. 3d 1115 (D. Minn. 2021).................................................36

*Purity Supreme, Inc. v. Att'y Gen.*,
380 Mass. 762 (1980) ..........................................................................27

*Putnam Res. v. Pateman*,
958 F.2d 448 (1st Cir. 1992)....................35

*R. E. Spriggs Co. v. Adolph Coors Co.*,
37 Cal. App. 3d 653 (1974)....................13

*Reich v. Purcell*,
67 Cal. 2d 551 (1967)....................35

*RLH Indus., Inc. v. SBC_Commc'ns, Inc.*,
133 Cal. App. 4th 1277 (2005)....................12

*Romero v. Philip Morris, Inc.*,
242 P.3d 280 (N.M. 2010)....................18

*Samuels v. King Motor Co. of Fort Lauderdale*,
782 So. 2d 489 (Fla. Dist. Ct. App. 2001)....................25

*Scott v. Ford Motor Co.*,
224 Cal. App. 4th 1492 (2014), *as modified on denial of reh'g* (Apr. 23, 2014) 35

*Stromberg v. Qualcomm Inc.*,
14 F.4th 1059 (9th Cir. 2021).................... 15, 29

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011)....................13

*Swanson v. The Marley-Wylain Co.*,
280 Cal. Rptr. 3d 496 (2021)....................35

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016).................... 34, 38

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996)....................40

*Vaquero v. Ashley Furniture Indus., Inc.*,
824 F.3d 1150 (9th Cir. 2016)....................34

*Ward v. United Airlines, Inc.*,
9 Cal. 5th 732 (2020) ....................................................................................13

*Washington Mut. Bank, FA v. Superior Ct.*,
24 Cal. 4th 906 (2001) ............................................................................ 25, 33

*Whitinsville Plaza, Inc. v. Kotseas*,
378 Mass. 85 (1979) ......................................................................................27

*Zinser v. Accufix Rsch. Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001), *opinion amended on denial of reh'g*,
273 F.3d 1266 (9th Cir. 2001) ................................................................. 34, 40

**Rules & Statutes**

Fed. R. Civ. P. 1 ..............................................................................................34

20 Civil Code § 3281 .......................................................................................11

Cal. Bus. & Prof. Code § 16702 ......................................................................10
Cal. Bus. & Prof. Code § 16720 ...................................................................9, 10
Cal. Bus. & Prof. Code § 16726 ........................................................................9
Cal. Bus. & Prof. Code § 16760(a)(1) .............................................................11

2001 Fla. Sess. Law Serv. Ch. 2001-39 (C.S.S.B. 208) (West) ..............................25
Fla. Stat. § 501.201 ...........................................................................................25
Fla. Stat. Ann. § 501.211(2) (West).....................................................................25

Mo. Ann. Stat. § 407.025(1) (West) ....................................................................26

## INTRODUCTION

In 2018, Altria Group, Inc. ("Altria"), agreed to exit the U.S. e-cigarette market and pay $12.8 billion in exchange for a 35% stake in its competitor (the "Transaction"), then-San Francisco-based market leader, Juul Labs, Inc. ("JLI") (collectively with Altria, "Defendants"). This eliminated competition, allowing JLI to charge supra-competitive prices and Altria to share in that benefit.

This memorandum is filed on behalf of the appellee indirect purchaser ("IPP") and indirect reseller ("IRP") classes.[1] Defendants' appeal challenges the District Court's narrow class-certification ruling that California's Cartwright Act may govern claims of indirect plaintiffs in *Illinois Brick* repealer states[2] where the alleged conspiracy was substantially linked to California. Defendants' contrary arguments misconstrue both California's limits on extraterritorial application and California's choice-of-law rules. Defendants identify no legal or factual errors and no abuse of discretion. The District Court's class-certification order should be affirmed.

## STATEMENT OF ISSUES

Whether the District Court properly certified the Cartwright Classes of indirect purchasers in repealer states, where:

---

[1] For the purpose of this brief, "Plaintiffs."

[2] *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), bars indirect purchaser damages claims. States that permit such claims are called "repealer states."

a. As the conspiracy was conducted, in significant part, in California and the Cartwright Act exists to deter such wrongdoing; and

b. California choice-of-law rules support class-wide application of the Cartwright Act.

## COUNTERSTATEMENT OF THE CASE

The Transaction was conditioned on the elimination of Altria as a competitor. As agreed with JLI, in order to acquire a substantial stake in JLI's profits, Altria withdrew its competing products and exited the e-cigarette market. The Transaction eliminated competition between Defendants over price, shelf space, and innovation. As a result, members of the classes—comprised of consumers and resellers who purchased JLI's JUUL products—each paid more than they would have in a competitive market.

The Transaction benefited Altria, which gained a stake in the market leader, while JLI eliminated a major competitor, and achieved a $4.4 billion payout for its two largest shareholders, Nicholas Pritzker, who negotiated and championed the deal, and Riaz Valani. 2-IP-SER-571:16-572:17; 2-IP-SER-550:25-551:3.

**A. Altria was a significant, growing competitor in e-cigarettes.** Altria, owner of the Marlboro brand, recognized that e-cigarettes threatened its cigarette business. It "spent well over half a billion dollars, maybe up to a billion dollars, investing in the e-vapor category." 2-IP-SER-518:15-20. The sales and capabilities

of Altria's e-cigarette subsidiary, Nu Mark, and its MarkTen brand, grew significantly from 2016 to 2018. 4-DPP-SER-601–604, ¶¶ 34-36, Figs. 5, 6. Altria's MarkTen Elite product was fast-tracked to the market to begin competing against JLI's market-leading JUUL in February 2018. 1-IP-SER-179:21-181:5. MarkTen became the second-largest e-cigarette brand and the fastest-growing brand behind JUUL. 2-IP-SER-487; 2-IP-SER-461-462; 2-IP-SER-468.

**B. JLI conditioned any deal on Altria's exit from the market**. Defendants and their most senior executives began meeting (including meetings in California) in 2017 to discuss Altria acquiring an interest in JLI. 5-IP-SER-951; 5-IP-SER-437:11-438:17; 2-IP-SER-412; 2-IP-SER-453.

By July 2018 at the latest, JLI made the following condition explicit: there would be no transaction unless Altria ceased competing in e-cigarettes. 2-IP-SER-429-430. At a meeting at in California in August 2018, Altria resisted that demand but JLI responded that any proposal preserving Altria's ability to compete through existing or future products was "not acceptable." 2-IP-SER-415. Altria's documents show that, before the parties' next in-person meeting, Altria planned to explain that its proposed revisions to JLI's terms were "driven by antitrust approval," rather than any "substantive disagreement" with JLI's insistence that Altria agree to exit e-cigarettes and make JLI Altria's "exclusive e-vapor play." 1-IP-SER-168. The ensuing negotiations—where Pritzker suggested the parties exclude the antitrust

lawyers, 1-IP-SER-174 — were "highly successful." 3-IP-SER-624. A new term sheet followed, requiring contribution or divestiture of all Altria's e-cigarette assets and imposing additional anticompetitive restrictions. 3-IP-SER-594–96; 3-IP-SER-586–87; 2-IP-SER-412; 2-IP-SER-401.

**C. The parties finalized the Transaction when Altria exited the market.** After largely finalizing the Transaction's terms, on October 25, 2018, Altria informed the FDA that it planned to withdraw its pod-based products from the market. Altria forwarded that confidential communication to JLI. 2-IP-SER-373.

Four days later, the parties reached final agreement. 4-IP-SER-873. On December 7, 2018, Altria announced it would discontinue *all* its e-cigarette products. 2-IP-SER-367.

The Transaction closed on December 20. Altria paid JLI $12.8 billion in cash for a 35% interest in JLI. 2-ER-48. As summarized in JLI's deal announcement talking points, ***"$12 billion dollars that could have been spent competing with JUUL . . . will now be used to help JUUL."*** 2-IP-SER-332-33; 338 (emphasis supplied).

**D. The record contradicts Defendants' statements concerning Altria's market exit.** The Transaction included a non-compete clause with a carve-out allowing Altria's continued sale of existing products, but this was meaningless (4-IP-SER-864) (referencing "nonsense issue"), because by the time the deal closed,

Altria had abandoned the sale of its existing products per the parties' unwritten, anticompetitive agreement. Second, Altria's claim that its market withdrawal resulted from FDA pressure to prevent youth vaping is belied by evidence that it *conditioned withdrawal of its vaping products on achieving a deal with JLI* (1-IP-SER-073) and viewed the FDA letter as "good cover" (a good excuse) for the withdrawal. 1-IP-SER-162–65.

**E. The FTC proceeding did not adjudicate Plaintiffs' claims.** The full Commission vacated and criticized the initial ALJ dismissal of the FTC's action (2-ER-58) and concluded that an agreement requiring Altria to exit the market appeared to constitute a "naked elimination of competition" warranting *per se* condemnation (2-ER-62-63) (which Plaintiffs here, unlike the FTC, have alleged). The Commission only dismissed the action because Defendants had unwound the Transaction and freed Altria to reenter the market. 2-ER-61. The Commission recognized the possibility of "additional relief that could be granted to remedy an illegal transaction[,]" including to redress harm to "market participants." 2-ER-61.

**F. This action's primary connections are to California.** This case is tied to California at every level: critical acts underlying both the formation of the alleged conspiracy and the execution of the resulting agreement took place in California. The conspiracy arose from Altria's effort to acquire JLI which was based in

California at all relevant times.[3] 2-IP-SER-364. JLI's executives and directors who orchestrated the non-compete agreement were based in California. *Id*. JLI hosted key meetings with Altria at its California headquarters, including:

- The first exploratory conversation about the potential transaction in April 2017. 2-IP-SER:524:9-525:15;

- The key August 18, 2018 meeting where JLI treated the proposed non-compete clause as essential to Altria's investment, making clear for Altria to retain the right to compete was "not acceptable" and seeking agreement on foundational principles, including the non-compete agreement. 2-IP-SER-360:8-361:18; 2-IP-SER-422;

- November 2018 due diligence meetings surrounding the closing of the acquisition. 2-IP-SER-324-26.

- Regular post-Transaction meetings involving Defendants' executives and staff, to carry out the terms of the Agreement. E.g., 2-IP-SER-321; 3-IP-SER-658; 3-IP-SER-65.

JLI's JUUL products, purchased by every member of every class, were researched, designed, and developed in California. 3-IP-SER-669, ¶ 5. California was also one of JUUL's largest markets. 3-IP-SER-660.

In short, California was the epicenter of the alleged conspiracy.

[3] JLI moved its headquarters to Washington, DC, in late 2020, but the anticompetitive conduct at issue overwhelmingly occurred in 2018.

## SUMMARY OF ARGUMENT

The District Court correctly certified the multistate Cartwright Act classes. The challenged conspiracy is strongly tied to California: JUUL was headquartered there, key negotiations occurred there, and the alleged agreement by which Altria acquired a stake in JLI and exited the e-cigarette market was conceived and implemented there. Thus, applying the Cartwright Act to purchasers in *Illinois Brick* repealer states regulates substantial in-state conduct, not purely extraterritorial activity. The Act's text, purpose, and controlling precedent all support such application.

The District Court correctly found no outcome-determinative conflicts between California law and the laws of other repealer states, all of which permit indirect-purchaser antitrust claims and share the same fundamental interest in deterring anticompetitive conduct. The differences between the state laws identified by Defendants are either immaterial under the facts of this case or primarily concern limited remedies issues, which can be addressed through jury questions on verdict forms without affecting common, class-wide liability issues. If California law were displaced, California's interest in regulating anticompetitive conduct orchestrated within its borders would be more impaired than any competing state interest. And under this Court's decision in *Olean*, the possibility that some class members ultimately prove uninjured does not defeat certification. For these reasons, and

because liability, impact, and class-wide damages can be proven through common evidence, common issues predominate. The Court should affirm.

## ARGUMENT

### I. THE MULTISTATE CARTWRIGHT CLASSES WERE PROPERLY CERTIFIED

The District Court correctly concluded that the Cartwright Act could be extraterritorially applied (Op. at 27) and that Defendants failed to identify any material conflicts or differences between state laws that could not be easily accommodated at trial, and thus no state's interest would be impaired. *Id.* at 29-32. Defendants challenge certification of the Cartwright Classes not because the interests of any other repealer state would be impaired under the facts of *this* case, but because they want this Court to bar certification of *any* multistate Cartwright class. This action is a poor vehicle for that attempt: the conduct is deeply rooted in California, Plaintiffs allege willful and flagrant misconduct, and the District Court devised a mechanism to accommodate differences in state damages.

The Cartwright Classes here include only purchasers of JUUL in *Illinois Brick* repealer states. Similar Cartwright Act classes have been certified time and again. *See, e.g.*, *In re Korean Ramen Antitrust Litig.*, No. 13-cv-04115-WHO, 2017 WL 235052, at *22 (N.D. Cal. Jan. 19, 2017); *In re Packaged Seafood Prods. Antitrust Litig.*, 332 F.R.D. 308, 345–46 (S.D. Cal. 2019), *aff'd sub nom.*, *Olean Wholesale*

*Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). *See also* cases *supra* at 12.

### A. The Cartwright Act Governs the Out-of-State Sales Here Due to In-State Conduct

#### 1. Defendants' Extraterritoriality Argument Misconstrues Cartwright Act Liability

The Cartwright Act targets conspiracies intended to suppress competition and inflate prices. *See* Cal. Bus. & Prof. Code §§ 16720, 16726. Liability does not arise solely from the sale of the impacted good. *See* Cal. Bus. & Prof. Code § 16726. Instead, conduct "proscribed by the Cartwright Act includes 'the full extent of incipient conspiratorial conduct'." *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1110 (9th Cir. 2013) (internal citation omitted). *See also In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*TFT-LCD II*"), No. 10-05625 SI, 2013 WL 6327490, at *3 (N.D. Cal. Dec. 3, 2013). Here, because the conspiracy was conceived and advanced largely in California, applying the Cartwright Act regulates in-state activity. That injury-producing sales also occurred outside California does not transform a California-formed conspiracy into extraterritorial conduct. Indeed, the Cartwright Act's text, legislative history, and precedent support the Act's application to the multistate Cartwright Classes. The District Court correctly concluded that no controlling authority bars application of the Cartwright Act to out-of-state sales. 1-ER-29-32.

Defendants do not challenge and therefore concede the finding of substantial California contacts. 1-ER-31. JLI was a California company and developed and sold its products from California. California was also one of JUUL's largest markets. The parties negotiated and implemented their anticompetitive agreement largely in California, including critical meetings in San Francisco. *See AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d at 1112 ("anticompetitive activities within California creates state interests" in "conduct that cause[d] out-of-state injuries"). Altria's withdrawal from the market impacted California-based JLI's products sold in national commerce. It is fitting that California law governs.

### 2. The Cartwright Act's Language Supports Application to Out-of-State Sales

The Cartwright Act covers out-of-state purchases impacted by in-state violations. An action "may be brought by ***any person*** who is injured in his business or property by reason of anything forbidden … by this chapter…" Cal. Bus. & Prof. Code § 16750 (West) (emphasis supplied). Further, " '***person***' or 'persons' includes corporations, …existing under or authorized by the laws of this State or ***any other State***…." Cal. Bus. & Prof. Code § 16702 (emphasis supplied).

Defendants cite §16720(d), which specifies articles "intended for sale, barter, use or consumption in this State," but ignore §§16720 (a)-(c) and (e)(1)-(4), all of which do ***not*** include any "State" language. Under the construction principle *expressio unius est exclusio alterius*, the exclusion of the "this State" limitation in

some articles but not others is intentional.[4] *See also Diamond Multimedia Sys., Inc. v. Superior Ct.*, 19 Cal. 4th 1036, 1063–65 (1999) (discussing "in this state").

**3. Legislative History Favors Extraterritorial Application**

"From its inception, the Cartwright Act has always been focused on the punishment of violators for the larger purpose of promoting free competition …" *AT & T Mobility*, 707 F.3d at 1112 (cleaned up). Deterrence supports making state-created remedies available to out-of-state parties harmed by California misconduct. *See Diamond Multimedia*, 19 Cal.4th at 1063–65 (rejecting similar "in this state" argument).[5]

For example, 20 Civil Code § 3281, permits a products liability lawsuit by "'[e]very person who suffers detriment' from unlawful acts or omissions in California [to] recover damages from the person at fault." *Diamond Multimedia*, 19 Cal.4th at 1059. Thus, Defendants' "assertion that the presumption against extraterritoriality prohibits recovery of penalties for *harm* occurring outside the state is simply incorrect." *People v. Ashford Univ., LLC*, 100 Cal. App. 5th 485, 522 (2024) (quoting *Diamond Multimedia*).[6]

---

[4] Other sections are unavailing to Defendants. *E.g.* § 16760(a)(1) allows *parens patriae* claims.

[5] Defendants cite the Act's original 1907 subtitle, which has been removed.

[6] Both *Morrison* and *RJR Nabisco* (CoC Amicus at 12, Wash. L. Amicus at 5) address foreign, not interstate, extraterritoriality.

If, as Defendants argue, the Cartwright Act was enacted to suppress anti-competitive conduct in California and punish California cartels (AOB-24), then proven cartelists must be jointly and severally liable for their sales to and overcharging of in-state *and* out-of-state customers. (Appellant's Opening Brief ("AOB") filed July 21, 2026). Defendants' citation of *John M. Landry & Kirk A. Hornbeck, One Hundred Years in the Making: The Cartwright Act in Broad Outline*, 17 Competition 7, 8 (2008), does not help them. Although it claims the Cartwright Act was enacted because the Sherman Act could not reach *intrastate* conduct, the next passage discusses the Sherman Act's ineffectiveness in addressing *interstate* cartels, showing a concern about the Sherman Act's efficacy nationwide.[7]

**4. Precedent Forecloses Defendants' Extraterritoriality Argument**

In *AT&T Mobility*, this Court held that application of the Cartwright Act to claims arising from purchases made outside California is constitutional so long as a "*de minimis* amount of that defendant's alleged conspiratorial activity" was in-state, even where "[n]one of plaintiffs' purchases at issue ... was made in California." *Id.*, 707 F.3d at 1108–09, 1113–15. Since *AT&T Mobility*, courts have repeatedly certified Cartwright Act classes reaching out-of-state sales. *See, e.g.*, *In re Lithium*

---

[7] The States Amicus's commerce clause argument (Br. at 16) is so weak that Defendants did not bother to make it, and they identify no state-by-state conflicts. *See also RLH Indus., Inc. v. SBC Commc'ns, Inc.*, 133 Cal. App. 4th 1277, 1289–90 (2005) (distinguishing *Healy*, on which Amicus relies).

*Ion Batteries Antitrust Litig. ("Batteries II")*, No. 13-MD-2420 YGR, 2017 WL 1391491, at *14 (N.D. Cal. Apr. 12, 2017); *Korean Ramen*, 2017 WL 235052, at *21.[8] *See also* cases cited *infra* at 8.

Defendants' and Amici's citations to *dicta* from *In re HIV Antitrust Litig.*, No. 19-cv-02573-EMC, 2022 WL 22609107, at *9 (N.D. Cal. Sep. 27, 2022), and *In re Capacitors Antitrust Litig.*, No. 17-MD-02801-JD, 2020 WL 6462393, at *7 (N.D. Cal. Nov. 3, 2020), are distinguishable, as the Court below held. Neither definitively resolved any extraterritoriality question. *Capacitors* also did not involve any significant presence or in-person conspiratorial conduct in California.[9]

---

[8] *AT&T Mobility* addresses due process but undermines Defendants' premise that the place of purchase is dispositive.

[9] *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011) and *Ward v. United Airlines, Inc.*, 9 Cal. 5th 732 (2020), cited by Defendants, were labor cases involving work centered outside California, and *Ward* held that exterritoriality presumptions were not determinative "in our modern, interconnected economy, [where] many legal transactions and relationships span multiple jurisdictions." *Campbell v. Arco Marine, Inc.*, 50 Cal. Rptr. 2d 626, 632 (1996) involved no California conduct, though Defendant was headquartered there. *R. E. Spriggs Co. v. Adolph Coors Co.*, 37 Cal. App. 3d 653 (1974) concerned federal preemption, not extraterritoriality, and the court viewed the sales as made in Colorado ("All sales are made FOB Golden, Colorado") but did not preclude application of Cartwright Act. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 816–18 (9th Cir. 1988) involved promotion of products only in other countries, concerned only foreign commerce, and showed no California connection to the case, much less to the anticompetitive conduct, other than the plaintiffs' residence. In *J. P. Morgan & Co. v. Superior Ct.*, 113 Cal. App. 4th 195, 222 (2003), the conspiracy to manipulate trading on non-California exchanges overwhelmed the far less significant contacts with California.

## II. CALIFORNIA CHOICE-OF-LAW MANDATES THE APPLICATION OF THE CARTWRIGHT ACT TO OUT-OF-STATE PURCHASES

Defendants' choice-of-law argument falls short of the framework established by this Court in *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) (*overruled on other grounds by Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022)) and by California's Supreme Court in *Chen v. Los Angeles Truck Centers, LLC*, 7 Cal. 5th 862, 867–68 (2019).

### A. Defendants Identify No Error in the Conflict of Laws Analysis

The choice-of-law standard in *Chen*, identical to that in *Mazza*, provides:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a ***true conflict*** exists. Third, ***if*** the court finds that there is a ***true conflict***, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law 'to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state' [citation], and then ultimately applies "the law of the state whose interest would be the more impaired if its law were not applied."

*Chen*, 7 Cal. 5th at 867–68 (emphasis supplied); *see also Mazza*, 666 F.3d at 590 (same, in subparagraphs). Defendants' "cleaned up" quotation (AOB 27-28) misleadingly omits the requirement that the court find a "***true conflict***" as a prerequisite for proceeding. *Chen*, 7 Cal. 5th at 867–68; *Mazza*, 666 F.3d at 590.

Defendants identify no error in the District Court's analysis. They discuss only three purported differences between the Cartwright Act and other states' laws: (1) how states apply *Associated General Contractors of California, Inc. v. California State Council of Carpenters* ("*AGC*"), 459 U.S. 519 (1983); (2) reseller-standing variations in three states; and (3) the availability of multiple or punitive damages or duplicative liability. The first presents no true conflict. The second, not raised below, identifies no state's interest that would be impaired by applying the Cartwright Act here. The third is easily addressed by jury questionnaire on flagrancy and by mathematics.

The laws of each included state are similar in critical respects. Each allows indirect purchasers to bring antitrust claims and recover damages, prohibits the conduct at issue, allows class actions, and has a statute of limitations that had not elapsed when this litigation commenced. [10]

Defendants' extensive reliance on *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1067 (9th Cir. 2021), and *Mazza* is misplaced. In *Stromberg*, unlike here, the class included non-repealer states, and only *those states*' interests were found significantly impaired by the application of California law. 14 F.4th at 1073. *Mazza* was a consumer-fraud case with state-law variances concerning *reliance*, which

[10] While *Stromberg* said in *dicta* that it was "not clear" whether a single class of all repealer states could be certified, it remanded for the determination that the District Court properly made here. 14 F.4th at 1074.

occurs in the state of purchase, 666 F.3d at 590, whereas antitrust cases focus on where the anticompetitive conduct occurs. *Mazza* also left open the possibility that state-law variations could be managed through juror questionnaires. *Id.* at 594.

Where only repealer states are in the class and the California connection is strong, courts have found that applying California law to out-of-state purchases satisfies California's choice-of-law rules. *See In re Optical Disk Drive Antitrust Litig.*, No. 3:10-MD-2143 RS, 2016 WL 467444, at *14 (N.D. Cal. Feb. 8, 2016); *Packaged Seafood*, 332 F.R.D. at 345; *Korean Ramen*, 2017 WL 235052, at *22; *Batteries II*, 2017 WL 1391491, at *14 (N.D. Cal. Apr. 12, 2017) ("California's interests would prevail over less significant issues" such as *AGC*).[11]

**B. Defendants Fail to Apply the Law to the Facts of This Case**

Defendants do not conduct the required analysis to identify material differences in the relevant states' laws as applied to this case. *Cf. Packaged Seafood*, 332 F.R.D. at 345 (defendants "do not actually address the five *AGC* factors and apply them to this case."). California law "require[s] the defendant to analyze various states' laws 'under the circumstances of the particular case' and 'given the particular [legal] issue in question.'" *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 547 (C.D. Cal. 2012) (quoting California Supreme Court's decision in *Kearney v.*

[11] The Chamber of Commerce Amicus's forum-shopping argument (CoC at 25-26) ignores the undisputed, numerous California connections here.

*Salomon Smith Barney*, 39 Cal. 4th 95, 107–08 (2006)); *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL 1410264, at *3 (C.D. Cal. Apr. 9, 2014) (quoting *Bruno*).

Instead, Defendants offer conclusory assertions divorced from the facts. *See In re POM Wonderful LLC Mktg. & Sales Practices Litig.*, No. MDL 2199, 2012 WL 4490860, at *3–4 (C.D. Cal. Sep. 28, 2012) (decertified on other grounds) (defendant nowhere applied the facts of the case to those laws); *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010) (no true conflicts despite "an appendix [of] state-by-state variations"); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 598 (C.D. Cal. 2008) (same). "Merely citing other courts' choice-of-law analysis, based on the facts before those courts, fails to discharge Defendants' burden of showing a 'compelling reason' displacing California law." *Forcellati*, 2014 WL 1410264 at *2. Defendants thus avoid the real questions of whether the policies supporting Plaintiffs' various state claims collide (they do not) and whose impairment is greatest (California's).[12]

---

[12] The Washington Law Foundation's Amicus arguments at 11-12 similarly fail. The due process argument is so weak that Defendants abandoned it on appeal. Nor does the Amicus's disregard of the California connections of the conspiracy make those connections disappear. And Chamber of Commerce fails (at 21-22) to identify a single difference or defense that prejudices Defendants with respect to the Rules Enabling Act.

Courts routinely hold that, "[a]part from the *Illinois Brick* issue … the potential differences identified between California and some of the other jurisdictions do not appear to stand as true conflicts…." *See, e.g.*, *Optical Disk Drive*, 2016 WL 467444, at *12–13. That is true here.

### 1. Differences in How States Apply *AGC* Do Not Create Material or True Conflicts

Defendants recycle the frequently rejected argument that states materially differ in applying *Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"). AOB-33.[13] Any differences in states' application of *AGC* are immaterial because no level of application would produce a different result on these facts. *AGC* was designed to bar claims based on injuries too remote from the anticompetitive conduct, not claims by purchasers of physical goods in the direct chain of distribution. Indeed, nearly all cases Defendants cite involve plaintiffs outside the distribution chain[14] or purchasers of finished

[13] The Cartwright Classes here are limited to *Illinois Brick* repealer states, where California's interests are shared by the states in which Class members purchased, despite minor variations in *AGC* standing factors. *Batteries II*, 2017 WL 1391491, at *14.

[14] *E.g.,* several of Defendants' citations are to credit card cases where the processing services at issue were not what plaintiffs purchased. Also, in *Nev. Recycling & Salvage, Ltd. v. Reno Disposal Co*., 423 P.3d 605 (Nev. 2018), plaintiff was not a competitor or purchaser in the relevant market. And, *Cepiel* similarly involved plaintiffs who were not market participants. AOB-35. *Romero v. Philip Morris, Inc.*, 242 P.3d 280, 291 (N.M. 2010), does not address *AGC* or standing. AOB-35.

products containing the relevant good only as a component. JLI's products where purchased by members of the Cartwright Classes unaltered.[15]

"[I]t is inappropriate to broadly apply the *AGC* test to plaintiffs' claims under the repealer states' laws in the absence of a clear directive from those states' legislatures or ***highest*** courts." *In re TFT-LCD (Flat Panel) Antitrust Litig. ("TFT-LCD I")*, 586 F. Supp. 2d 1109, 1123 (N.D. Cal. 2008) (citing *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1090 (N.D. Cal. 2007) (emphasis supplied). But Defendants rely on many lower court decisions. Also, Defendants cite general harmonization provisions, but courts repeatedly reject them. *See, e.g.*, *In re Flash Memory Antitrust Litig.,* 643 F. Supp. 2d 1133, 1153 (N.D. Cal. 2009).

### 2. Application of the *AGC* Factors to the Facts Supports Certification

Even if Defendants showed that "laws of California and some states differ as to … standing requirements," "to meet their burden, it is not enough that Defendants show a difference in the law; the difference shown must be 'material, that is, ... [it must] make a difference in *this* litigation.'" *Packaged Seafood*, 332 F.R.D. at 337 (quoting *Mazza*). Defendants merely assert that states vary as to *AGC*. They do not

[15] Appellees' review reveals no case in which a court relied on *AGC* to dismiss an indirect purchaser claim in a similar context. 1-IP-SER-270-287 and 1-IP-SER-289 para. 7).

genuinely explain how applying AGC differently would make a difference in *this* litigation.[16] In fact, it would not.

### a. The Nature of the Alleged Injury

Plaintiffs allege that Defendants conspired to eliminate Altria as a competitor in exchange for an equity stake in JLI, enabling JLI to make purchasers pay artificially higher prices. Indirect Plaintiffs are consumer and reseller purchasers in the e-cigarette market, who were overcharged as a result of Defendants' agreement. This presents a straightforward injury, and indirect plaintiffs are prototypical market participants. *See In re Lithium Ion Batteries Antitrust Litig. ("Batteries I")*, No. 13-MD-2420 YGR, 2014 WL 4955377, at *12 (N.D. Cal. Oct. 2, 2014) ("Consumers and competitors in the allegedly restrained markets exemplify the sort of market participants who may suffer the requisite injury.") (citations omitted).

### b. The Directness of the Injury

Courts "look to the chain of causation between [the] injury and the alleged restraint in the market." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1058 (9th Cir. 1999) "[D]iscrete injuries traceable through a distribution chain tilt this factor in favor of antitrust standing." *Batteries I*, 2014 WL 4955377, at *14

---

[16] The *AGC* factors are:(1) the nature of plaintiffs' injuries and whether plaintiffs were participants in the relevant markets; (2) the directness of the alleged injury; (3) the speculative nature of the alleged harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages. *Batteries I*, 2014 WL 4955377, at *11.

(citations omitted). Repealer states have determined that claims for overcharges passed through a distribution chain are cognizable. *Cf. In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *8 (N.D. Ill. Nov. 5, 2009).

**c. The Non-Speculative Nature of the Harm**

Defendants erroneously argue that because prices may include transportation or storage, they are speculative. AOB-34. If that were a meritorious argument, no indirect case could *ever* be brought, even intrastate. "Identical products, uniform prices, and unitary distribution patterns are not indispensable for class certification." *In re Static Random Access memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 614 (N.D. Cal. 2009) (citation and quotations omitted).

Defendants next contend that damages are speculative because some IRPs may have passed Defendants' overcharge along to IPPs. AOB-34. This argument fails for multiple reasons. First, the Indirect Classes each seek to prove their proportionate share of the overcharge. Second, while Defendants cite DPPs' expert, the IRPs and IPPs have each submitted expert reports from their respective economists measuring both overcharge and the rate of pass-through to each Class. *See* 5-ER-899-900, 3-IP-SER-649-670, ¶¶ 47-49; 5-IP-SER-993-995; Ex. 1, ¶¶ 73-74 and Table 7; IPP Reply Br. (ER-863-66); IPP CC Dec. Ex. 9 at ¶¶129-135.[17]

[17] IRPs' economist, Dr. Keith Leffler, found a 73% pass-through rate from the indirect resellers to consumers, which means that 27% of the overcharge was retained by members of the IRP class. *Id.* Both indirect economists' analyses have

California entrusts trial courts to allocate damages among different levels of purchasers to avoid duplicative recovery. *Clayworth v. Pfizer, Inc*., 49 Cal. 4th 758, 783, 787 (2010).[18]

Defendants rely heavily on *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig*., 383 F. Supp. 3d 187, 260 (S.D.N.Y. 2019), but it is an out-of-circuit opinion firmly out-of-step with the bulk of jurisprudence on this issue.

**d. The risk of duplicative recovery and complexity in apportioning damages**

The fourth and fifth factors "can be condensed." *Batteries I*, 2014 WL 4955377, at *15 (internal quotation and citations omitted). Recovery by both direct purchasers under federal law and indirect purchasers under state law is the natural result of states allowing indirect purchasers to seek damages and provides "no bar against standing" and "does not weigh against standing"—it is not "duplicative recovery" in the legal sense. *Id.* at *16, n.16 (citing *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1093 (N.D. Cal. 2007) "[S]tates ... which have repealed *Illinois Brick* and allowed indirect purchasers to sue for antitrust violations[] have necessarily made the policy decision

survived a *Daubert* challenge and are not being challenged on this appeal. *See* Order at 1-ER-35-36.

[18] *Humana Inc. v. Bausch Health Cos.*, No. HG21087971, 2023 WL 4552005, at *10 (Cal. Super. July 5, 2023) ("Where the fact of damages is certain, the amount of damages need not be calculated with absolute certainty.").

that duplicative recovery may occur."); *Flash Memory*, 643 F. Supp. 2d at 1155–56 (same, and collecting cases). All repealer states are alike in this regard.

Moreover, preventing duplicative recovery, including between indirect plaintiff classes, is the province of the trial court rather than the jury. *See infra* at 38.

**e. Defendants' Remaining Argument on Duplicate Recovery Shows No Material Difference**

Defendants also make an argument that, "[b]eyond *AGC*, [s]tates have adopted additional solutions to prevent duplicative recovery." AOB-38. Yet again, Defendants fail to show a material conflict. They assert, citing *Clayworth*, that California requires damages to be allocated among various types of injured purchasers, and New York and South Dakota allow states to take "any steps necessary" to avoid duplicative recovery. AOB 38. Defendants fail, however, to cite a single case suggesting that these differences impact apportioning damages, materially or at all.

Defendants further suggest that state-law policies would require the District Court to discount any amount awarded to indirect purchasers by any settlements paid to DPPs. AOB-38. Unsurprisingly, they cite no federal case in which this was done, nor statute mandating this result.[19]

---

[19] Defendants cite *Humana*, 2023 WL 4552005, at *8, which denied a similar motion.

### 3. States That Have Repealed Illinois Brick through Consumer Statutes Belong in the Cartwright Class

Although Missouri, Massachusetts, and Florida allow indirect claims under their consumer-protection statutes, Defendants contend those laws either are limited to consumers or require proof of consumer harm, barring Indirect Reseller Plaintiffs. IRP CC Reply Ex. 96 at 21-24, Ex. 107; AOB-32. However, Plaintiffs' detailed analysis of statutes and case law below showed that these states' consumer statutes (i) allow indirect purchaser recoveries, (ii) prohibit antitrust violations, and (iii) are interpreted harmoniously with federal antitrust law. Ex. 96 at 21-24. Defendants' entire argument below on this topic was as follows:

> As the Ninth Circuit noted in *Stromberg*, Florida, Massachusetts, and Missouri "limit the repeal [of *Illinois Brick*] to consumer protection statutes." 14 F.4th at 1068 n.2 (citing cases from Florida, Massachusetts, and Missouri) . . . . The *Stromberg* court describes such differences … as a "significant variation." *Id.* at 1068.

7-ER-1259. In reply, Plaintiffs submitted authority showing these states follow the Sherman Act to determine violative conduct. *See F.T.C. v. Cement Inst.*, 333 U.S. 683, 694 (1948); IRP CC Reply Ex. 107.

Accepting Plaintiffs' analysis (Defendants presented none), the District Court correctly held that Defendants had shown no true or material conflict. Order at 30. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 562 (9th Cir. 2019) ("If the objectors fail to meet their burden at any step … [D]istrict [C]ourt 'may properly find California law applicable without proceeding' [further]'") (citations omitted).

*See also Washington Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 921 (2001) (discussing burdens in context of national class).

Defendants' belated effort to show true conflict falls short. Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*, is not limited to consumers. FDUTPA was amended in 2001 to include businesses and commercial entities. 2001 Fla. Sess. Law Serv. Ch. 2001-39 (C.S.S.B. 208) (West); Fla. Stat. Ann. § 501.211(2) (West); *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 2015) (2001 amendment was intended to include non-consumers); *see, e.g.*; *Bluegreen Vacations Unlimited, Inc. v. Timeshare Termination Team, LLC*, No. 20-CV-25318, 2021 WL 2476488, at *6 (S.D. Fla. June 17, 2021) (collecting cases).[20]

Defendants argue that FDUPTA requires plaintiffs to "prove that there was an injury or detriment to consumers." AOB-32. But Defendants do not and cannot show that distinction is material in *this* litigation. *Mazza*, 666 F.3d at 590 ("A problem only arises if differences in state law … make a difference in this litigation.").

---

[20] Florida's consumer injury requirement also came from case law defining "unfair practice" as it was used before the Act's expansion to encompass non-consumers. *See gen. Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. Dist. Ct. App. 2001). Defendants fail to identify any recently expressed Florida state interest that would be furthered by blocking recovery for Florida resellers injured by the conspiracy alleged here. *See, e.g.*, *Offshore Rental Co. v. Cont'l Oil Co.*, 22 Cal. 3d 157 (1978), *holding modified by I. J. Weinrot & Son, Inc. v. Jackson*, 40 Cal. 3d 327 (1985).

In *this* litigation, IRPs must show the portion of the overcharge it absorbed, rather than passed down to consumers. As Defendants acknowledge, California allows trial courts to consider "pass-on" evidence and allocate damages among levels of purchasers. *See Clayworth*, 49 Cal. 4th at 787. Accordingly, the IRPs' expert concluded that 27% of the overcharge was retained by the Indirect Resellers, and the rest was passed on. *See* IRP Reply Br. at 8-9; Ex. 97, ¶¶ 47-49; Ex. 1, ¶¶ 73-74 and Table 7; IPP Reply Br. (ER-863-66); IPP CC Dec. Ex. 9 at ¶¶129-135. Crucially, no party to this litigation asserts that the *resellers* absorbed the entire overcharge, which is the only way a requirement of consumer injury could be material. Indeed, Defendants quote DPP's expert for the opposite proposition: that pass-through to consumers should be "close to 100%." AOB-34.

The goal of the Missouri Merchandising Practices Act ("MMPA") is "to regulate the marketplace to the advantage of those traditionally thought to have unequal bargaining power as well as those who may fall victim to unfair business practices," and its provisions should be given a "broad scope" in light of that "clear policy." *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 726–27 (Mo. 2009). Defendants assert that the statute offers a civil claim only for purchases "for personal, family, or household purposes". Mo. Ann. Stat. § 407.025(1) (West). But Defendants identify no affirmative Missouri state interest that will be impaired by allowing the small Missouri resellers with little bargaining power that make up the

majority of the IRP class to recover as part of a multistate Cartwright Act class here. *See Offshore Rental*, 22 Cal.3d at 166.

The Massachusetts Consumer Protection Act ("MCPA") allows businesses to recover for harm caused by unfair methods of competition. Mass. Gen. Laws Ann. ch. 93A, § 11 (West). Section 11 harmonizes "unfair methods of competition" with the Massachusetts Antitrust Act. *See Purity Supreme, Inc. v. Att'y Gen.*, 380 Mass. 762, 773 (1980) (discussing amendment). In *dicta*, the Massachusetts Supreme Court construed this language as incorporating the Massachusetts Antitrust Act's indirect purchaser bar. *Ciardi v. F. Hoffmann-La Roche, Ltd*., 436 Mass. 53, 62 (2002). But the language was likely added to clarify the type of conduct that was covered by the provision, which was considered vague at the time. *Whitinsville Plaza, Inc. v. Kotseas,* 378 Mass. 85, 100 (1979) ("It would doubtless be helpful if there were a clear definition of conduct" prohibited by the MCPA). Defendants identify no Massachusetts interest in treating consumers and resellers differently for the purpose of *Illinois Brick*.

Because Defendants failed to carry their burden under California's choice-of-law test both below and in their opening brief, their arguments are waived.

**a. California's Interests Would Be Most Impaired if Other States' Laws Were Applied**

The third prong of California's choice-of-law test requires the court to consider which state's interest would be most impaired if another state's law were

applied. Because Defendants fail to show that any differences cannot be readily addressed through administrative means (identified by the District Court), they fail to show that any other jurisdiction has an interest in denying its residents recovery under California law that outweighs California's interest in governing in-state conduct. *See Pecover v. Elec. Arts Inc.*, No. C 08-2820 VRW, 2010 WL 8742757, at *21 (N.D. Cal. Dec. 21, 2010) ("Applying the laws of foreign states will not vindicate California's legitimate interests in deterring harmful ***conduct within its borders***, whereas applying California law to nonresident plaintiffs will vindicate foreign states' interests in compensating their residents.") (emphasis supplied). "The perpetration of anticompetitive activities within California 'creat[es] state interests' in applying California law to that conduct." *AT & T Mobility*, 707 F.3d at 1112. "Even if the two states' interests were in equipoise, the Court would still be obliged to apply California law." *TFT-LCD II*, 2013 WL 6327490, at *4–5.[21]

Defendants oversimplify, asserting that *Stromberg* and *Mazza* mandate the purchase as the "place of the wrong" and therefore the state whose interest would be most impaired. AOB 41-43. But *Stromberg* itself holds, ***"[t]he place of the wrong***

[21] The States Amici's contention at 12 that the District Court's decision interferes with Iowa's prerogative to bring a *parens patriae* action is wholly hypothetical. Iowa has not brought such a claim.

***[is] not always controlling***". [22] *Stromberg* at 1073 (emphasis supplied). And *Mazza* "express[es] no view whether on remand it would be correct to certify … a class with members more broadly but with subclasses for class members in different states, with different jury instruction for materially different bodies of state law." That is, effectively, what the District Court ordered below.

California "no longer adhere[s] to the rule that the law of the place of the wrong is applicable … regardless of the issues before the court." *Bernhard v. Harrah's Club*, 16 Cal. 3d 313, 316 (1976). After *Mazza*, this Circuit criticized the place-of-purchase as "the 'wooden' and 'now largely abandoned' *lex loci delicti* doctrine."[23] *AT&T Mobility*, 707 F.3d at 1111. California's regulatory interests are not confined to injuries to California residents. *Diamond Multimedia*, 19 Cal. 4th at 1063 (California's "clear and substantial interest" in preventing wrongs in California with effects "throughout the country."). Additionally, "[t]he *raison d'etre* of choice of law analysis … is the common understanding that a set of facts giving rise to a lawsuit… may justify, in constitutional terms, application of

---

[22] *Hernandez v. Burger*, 102 Cal. App. 3d 795, 801 (1980), also cited by Defendants, holds it "true that the place of the wrong is no longer treated as a controlling factor" against another state's interest.

[23] *Gordon v. Reynolds*, 10 Cal. Rptr. 73, 77 (Cal. App. 1960), is a wrongful death claim, focused on the place of the crash.

the law of more than one jurisdiction." *AT & T Mobility*, 707 F.3d at 1111–12 (internal quotation marks and citation omitted).

The idea that the "last event" for a Cartwright claim occurs in the placeof purchase has also been rejected. *See TFT-LCD II*, 2013 WL 6327490, at *5 (rejecting that last relevant act happened where plaintiff placed purchase orders, holding "the 'last event' necessary to make [defendants] allegedly liable in California took place when [their] agents acted to carry out the alleged anticompetitive agreements.").

The District Court properly conducted the *Chen/Mazza* analysis, finding that even if there "may" be true conflicts as to states' remedies provisions, "under the third prong of the conflicts of interest analysis, they do not preclude class certification":

> Any true and material differences between the Cartwright Act and repealer states' damage provisions are readily respected and managed through jury instructions or a special verdict form where the jury is tasked with awarding only damages allowed under each repealer state's laws. Therefore, while there might be true conflicts in terms of permissible recovery, it is not outcome determinative on class certification. After liability is determined, damage difference can be readily managed to preserve each repealer state's interests. The recovery differences identified by defendants will not be impaired by determining liability under the Cartwright Act.

1-ER-34.

Courts routinely address issues of multiple states' laws through jury questionnaires, and indeed, the court will address Plaintiffs' individual state claims through one here. *Id.*; *see also, e.g.*, *In re HIV Antitrust Litig.*, 2022 WL 22609107, at *15 (differences as to damages could be addressed by jury form); *Packaged Seafood*, 332 F.R.D. at 346 (same). *See also Section III infra,* addressing predominance.

**b. The Remedy Differences Defendants Cite Are Too Minimal to Countermand California's Interest**

Defendants' real objection is not that the extraterritorial application of the Act ignores differences in remedies among some states, it is that a multistate Cartwright Act class may be certified at all. But they fail to assert differences in state-law recovery provisions that justify that result and fail to identify error in the District Court's holding that "the recovery differences [among certain states] identified by defendants will not be impaired by determining liability under the Cartwright Act." 1-ER-34.

First, Defendants assert conflicts among remedies in only eleven (11) of the 27-jurisdiction Cartwright Class (conceding uniformity of California, the District of Columbia, Kansas, Maine, Minnesota, Missouri, Nevada, New Mexico, New York, North Carolina, Oregon, Rhode Island, South Dakota, Vermont, West Virginia and Wisconsin). But Defendants show no conflicting interest where states allow enhanced damages for "willful," "knowing," or "flagrant" violations (Arizona, Iowa,

Massachusetts, New Hampshire, North Dakota, and Michigan). There is no conflict *here*, because such laws do not require a different result. Plaintiffs *do allege* willful, knowing and flagrant conduct.[24]

Similarly, Mississippi's $500 per injury in lieu of trebling is a difference only in calculating damages, not a *conflict* between their policies.

Although Florida, Hawaii, and Nebraska limit recovery to actual damages and *Stromberg* recognized these states' interest in encouraging business, that interest is theoretical here. JUUL products reach consumers in all states, but JLI has never limited sales in the many repealer states that permit treble damages. *See Jackson v. Tesla, Inc.*, 772 F. Supp. 3d 1111, 1130 (N.D. Cal. 2025) ("Given that Tesla continues to sell its vehicles in states like California that do not impose any cap whatsoever on non-economic damages, Tesla cannot credibly contend that it will cease selling vehicles to individuals in Maryland" if courts do not cap damages.)

## III. THE DISTRICT COURT DID NOT ERR IN FINDING THAT COMMON ISSUES PREDOMINATE

Defendants, having failed to persuasively argue that differences in enhanced damages rules defeat the District Court's choice-of-law analysis, next claim that the use of jury instructions to accommodate those differences would defeat

---

[24] Utah allows triple damages only where it would not bankrupt the defendant, but that makes no difference here. No one has asserted that a Defendant faces bankruptcy based on the trebling of Utah damages.

predominance. Def. Br. at § I.C. They argue that the decision combines "two highly disfavored approaches: applying dépeçage to split up the elements of a claim . . . and applying different rules to the very same claims within a single class action." Def. Br. at 47 (emphasis in original). But what Defendants refer to as "unprecedented" (*id.*) is a straight-forward application of long-standing principles, both under both California's choice-of-law regime and Rule 23(b)(3)'s predominance test.

***First,*** dépeçage (French for dismemberment) is part of California's choice-of-law rules, requiring courts to analyze state interests by *issue*, not by claim. *See Washington Mut. Bank*, 24 Cal. 4th at 920 ("separate conflict of laws inquiry must be made with respect to each issue in the case."); *Hurtado v. Superior Ct.*, 11 Cal. 3d 574, 582 (1974) (separating state interests in allowing cause of action from state interests in limiting recovery). Dépeçage permits courts to seek the "maximum attainment of underlying purpose by *all* government entities," *Kearney*, 39 Cal. 4th at 101 (italics in original) (citation and internal quotation marks omitted), including the shared interest binding all repealer states in the vigorous enforcement of antitrust laws by allowing indirect purchasers the right to sue. *Clayworth*, 49 Cal. 4th at 768 (Without an effective way to bring suit, "those who violate the antitrust laws … would retain the fruits of their illegality because no one was available who would bring suit against them") (quoting *Hanover Shoe v. United Shoe Mach. Corp.*, 392

U.S. 481, 494 (1968)).

***Second***, the objective of the predominance inquiry is efficient litigation, such that core, common issues can be tried once instead of multiple times. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). Here, central elements of Indirect Plaintiffs' claims (violation, antitrust injury, and class-wide damages) will be proven by common evidence under the same liability standards. *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (common issues may predominate despite individualized damages); *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016) ("individual damages calculations does not, alone, defeat class certification.").

Relying on its judicial experience, the District Court properly found that differences in state enhanced-damages rules can be easily managed "through jury instructions or a special verdict." Order at Order at 32:2-5. The District Court found this "poses no greater trial complexity than the use of multiple state subclasses," which federal courts frequently manage. *Id.* at n.14. Allowing these multistate classes to proceed serves the shared interest of all repealer states, and permits an efficient trial. *See* Fed. R. Civ. P. 1 (Rules construed "to secure the just, speedy, and inexpensive determination of every action ...").

### A. California Choice-of-Law Rules Allow Courts to Apply Different States' Laws to Different Issues in the Same Case.

"The concept of deciding choice-of-law on an issue-by-issue basis is formally known as dépeçage." *Foster v. United Airlines, Inc*., No. 3:19-CV-02530-JD, 2023 WL 3102570, at *2 n.2 (N.D. Cal. Apr. 25, 2023) (citing Black's Law Dictionary (11th ed. 2019)); *see also Jackson*, 772 F. Supp. 3d at 1224–30 ("California courts employ dépeçage" … to separately resolve differences in states' strict product liability regimes and treatment of noneconomic damages). *Putnam Res. v. Pateman*, 958 F.2d 448, 465 (1st Cir. 1992) (dépeçage "erects the framework under which different issues in a single case, … may be decided according to the substantive law of different states").

Dépeçage has led California courts to apply different state laws to liability and recovery. *See Reich v. Purcell*, 67 Cal. 2d 551, 556 (1967) (Missouri law regulated conduct within its borders but Ohio law applied to damages); *Hurtado*, 11 Cal. 3d at 584 (separately analyzing each element of wrongful death claim); *Scott v. Ford Motor Co*., 224 Cal. App. 4th 1492, 1503–08 (2014), *as modified on denial of reh'g* (Apr. 23, 2014) (applying California's interest separately to punitive damages).

Defendants rely on *Swanson v. The Marley-Wylain Co.,* 280 Cal. Rptr. 3d 496, 503 (2021), for the proposition that the "California Court of Appeal has expressly rejected the possibility that 'the law of different states may govern *different elements of a single cause of action*.'" AOB-46. But the elements at issue in *Swanson* was

substantive liability, not damages. In fact, the only court to cite *Swanson* for this proposition did so to refute the same argument Defendants make here:

> Moving Defendants' "mix and match" argument, based on *Swanson v. Marley-Wylain Company*, is not persuasive. . . . In *Swanson*, the trial court applied the law of a different jurisdiction to the element of causation in the analysis of substantive liability, and the Court of Appeal reversed. . . . The Court has determined it will apply Wisconsin law to establish whether the Moving Defendants are liable to Plaintiffs on their product liability and negligence claims. A finding of liability on those claims is a predicate to liability on the wrongful death claim. . . . Plaintiffs will not be mixing and matching the elements needed to establish that the Moving Defendants are liable for Plaintiffs' injuries. The issue before the Court is whether California's more liberal laws on damages should apply if liability is established.

*Kelley v. AW Distrib., Inc*., No. 20-CV-06942-JSW, 2023 WL 3569996, at *2 (N.D. Cal. May 18, 2023) (applying Wisconsin liability and California compensatory damages) (cleaned up). *See also Perry, Tr. for Sherrell v. Beltrami Cnty.*, 520 F. Supp. 3d 1115, 1122 (D. Minn. 2021) ("[O]ne widely accepted approach [to dépeçage] is to apply one state's law to determine tort liability and another state's law to determine the extent of recovery—at least when doing so is otherwise consistent with the applicable choice-of-law rules").

Defendants argued below that states' interest in their damages regime is to balance antitrust enforcement with promoting commerce. 7-ER-1262-1263. But repealer states have all , by allowing indirect claims, expressly chosen deterrence of anticompetitive behavior. *See Comes v. Microsoft Corp*., 646 N.W.2d 440, 446 (Iowa 2002) ("The purpose behind both state and federal antitrust law is to apply a

uniform standard of conduct ….”); 8-ER- 1790-1791 (additional cases). By employing dépeçage, the District Court deftly ensured the "maximum attainment of underlying purposes by all government entities." *Kearney*, 39 Cal. 4th at 128 (enjoining future conduct under California law but barring damages for past conduct under Georgia law).

### B. Variations in Enhanced Damages Rules Do Not Swamp Common Issues and Do Not Defeat Predominance.

The existence of a violation, class-wide injury, and measurable, class-wide damages are all common issues, regardless of state law. *See* 1-ER-26-28 (indirect plaintiffs could show class-wide injury through expert testimony); *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2020 WL 5778756, at *27 (E.D. Va. Aug. 14, 2020), *report and recommendation adopted*, No. 2:18MD2836, 2021 WL 3704727 (E.D. Va. Aug. 20, 2021) ("[A]ssuming arguendo that the three states identified by Defendants impose some additional burden of proof with respect to liability and/or damages and thus present individualized issues, such variations are immaterial and pose no risk of overtaking the overwhelming common evidence expected to be presented in this case.").

The court must then "analyze whether the common questions predominate over the individual questions" in the case. *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1233 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1051 (2025). Here, *regardless of state law*, because all the central issues will be resolved with the same class-wide

evidence, there cannot be any individualized state legal questions to defeat predominance. The inquiry needs no further consideration and predominance is found. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 668 (9th Cir. 2022) ("Nor can a District Court decline to certify a class that will require determination of some individualized questions at trial, so long as such questions do not predominate over the common questions"). Variances here concern only the application of enhanced damages, and individualized damages issues do not preclude certification. *Tyson Food*s, 577 U.S. at 453.

The District Court's decision to certify the Carwright Classes is consistent with a straight forward application of the test for predominance, which "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453. In the Ninth Circuit, this entails identification of the case's central issues. *DZ Rsrv.*, 96 F.4th at 1233. The elements of an antitrust claim are: "(i) the existence of an antitrust violation; (ii) "antitrust 'injury' or 'impact' flowing from that violation (i.e., the conspiracy); and (iii) measurable damages." *Olean*, 31 F.4th at 665–66. These elements will not vary through the classes by state of sale because each state follows the Sherman Act for determining antitrust violations. IP-SER-293.

Most states apply treble damages and do so automatically after a jury decides

single damages. The same is true of any applicable minimum damages provision. 1-IP-SER-184-195, 206-210. Only eight states condition enhanced damages (treble or punitive) on a particular culpability finding (willful, flagrant, or knowing conduct) 1-IP-SER-195-205.[25] These additional findings cannot outweigh the efficiencies of a multistate class that will decide all central issues under one standard. *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig*., 335 F.R.D. 1, 38 (E.D.N.Y. 2020) (enhanced damages findings did not swamp common questions or undermine manageability).

Defendants argue that the District Court failed to explain how its proposal would work at trial and suggest the jury would "struggle through countless state-specific instructions" to determine enhanced damage awards. Def. Br. at 48-49. Defendants have it backwards. In indirect purchaser antitrust litigation, the alternative to a multistate Cartwright class is state-specific classes, and at trial, variations would be handled *with the same devices contemplated by the District Court here*. *See TFT-LCD I*, 267 F.R.D. at 608; *SRAM*, 264 F.R.D. at 615 ("What would be unmanageable is the institution of countless individual lawsuits with the same facts and legal issues"). The Cartwright Act's application to all elements except enhanced damages simplifies the task of the trial court and jury.

[25] Excludes Arkansas, South Carolina, Tennessee, and Virginia, which were carved out of the certified classes by the District Court.

It matters that this is a jurisdiction with substantial experience managing antitrust cases. *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 n.4 (9th Cir. 2005) (no abuse of discretion for experienced judge not to adopt a trial plan at class certification). Defendants cite mass tort cases where the trial focus will be on individual causation issues. The U.S. Supreme Court, however, explored this distinction in *Amchem*, finding that while predominance may be a test readily met in cases alleging antitrust violations, the same was not true for mass tort cases with individualized causation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Specifically, Defendants quote case law from an era in which this Court was wrestling with whether mass tort cases could *ever* be tried on a class basis. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1230 (9th Cir. 1996); *Zinser*, 253 F.3d at 1185, 1189–90 (upholding decision not to certify a class where the negligence, products liability, and medical monitoring laws of 48 states bore on core liability questions); *Castano v. American Tobacco Co.*, 84 F.3d 734, 741–44 (5th Cir. 1996).

The reasoning of these cases should not be imported decades later into antitrust jurisprudence, where core issues are common and recovery issues are manageable by the experienced of the trial court here.

## IV. CERTIFIED CLASSES MAY INCLUDE UNINJURED CLASS MEMBERS

Conceding “the contrary holding in *Olean*,” Appellants nevertheless argue

that certification of the Cartwright Classes was improper because hypothetical retailers that passed on the entire overcharge and hypothetical consumers who purchased from retailers that fully absorbed it suffered no injury. AOB 49 (citing dicta within Justice Kavanaugh's dissent in *Laboratory Corporation of America Holdings v. Davis*, 605 U.S. 327, 332 (2025)). But Rule 23 says nothing about injury or damages. That is why the Court held in *Olean*, "[W]e reject the dissent's argument that Rule 23 does not permit the certification of a class that potentially includes more than a de minimis number of uninjured class members [. . . because it] is inconsistent with Rule 23(b)(3), which requires only that . . . [a] common question predominates over any individual questions, including individualized questions about injury or entitlement to damages." *Olean*, 31 F.4th at 669.[26]

In fact, a class definition should be broad enough to include those who, if they had filed their own lawsuit, could "rely [at trial] on the same body of common evidence to establish the common issue" (*e.g.*, defendants' liability), even if they "could not have been harmed by the defendant's allegedly unlawful conduct" or

---

[26] The Chamber of Commerce's Amicus argument (CoC at 23) concerning settlement pressure is baseless. First, it does not indicate how the District Court's means of addressing remedies increases settlement pressure beyond that in any antitrust class action. Second, as set forth herein, the District Court *did* conduct a proper Rule 23 analysis. Finally, their claim of settlement pressure is exaggerated, as such claims often are. Defendants routinely go to trial where factors may create significant settlement pressure. For example, *Capacitors Antitrust Litigation* (N.D. Cal., 3:14-cv-03264), went to trial even where defendants had criminal convictions.

cannot establish injury or damages at trial. *Olean*, 31 F.4th at 669 n.14 (citations and internal quotations omitted). Indeed, if a court certifies a class "defined to include only those individuals who were injured by the allegedly unlawful conduct", then the court "create[s] a fail-safe class . . . [that] is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id*. (citations and internal quotation marks omitted).

Thus, even assuming there exist some uninjured class members, the District Court properly certified the Cartwright Classes in accord with *Olean*. *Id.*

## CONCLUSION

For the foregoing reasons, the District Court certification of the classes should in all respects be affirmed.

Respectfully submitted,

Dated: September 21, 2026

By: *s/ Betsy C. Manifold*
Betsy C. Manifold

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
Email: manifold@whafh.com

Mark C. Rifkin
Thomas H. Burt
Kate McGuire
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 Madison Ave.
New York, NY 10016
Telephone: (212) 545-4600

Facsimile: (212) 545-4677
Email: rifkin@whafh.com
burt@whafh.com
mcguire@whafh.com

*Counsel for Indirect Purchaser Plaintiffs-Appellees*

Dated: September 21, 2026

By: *s/ Robin F. Zwerling*
Robin F. Zwerling

**ZWERLING, SCHACHTER & ZWERLING, LLP**
41 Madison Avenue, 32nd Floor
New York, NY 10010
Telephone: (212) 223-3900
Facsimile: (212) 371-5969
Email: rzwerling@zsz.com

*Interim Lead Counsel for Indirect Purchaser Plaintiffs-Appellees and Indirect Reseller Plaintiffs-Appellees*

Dated: September 21, 2026

By: *s/ Elana Katcher*
Elana Katcher

Robert N. Kaplan
Elana Katcher
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
Email: rkaplan@kaplanfox.com
ekatcher@kaplanfox.com

Solomon B. Cera
**CERA LLP**
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 777-2230
Facsimile: (415) 777-5189
Email: scera@cerallp.com

C. Andrew Dirksen
**CERA LLP**
529 Main Street, Suite P200

Boston, MA 02129
Telephone: (857) 453-6555
Email: cdirksen@cerallp.com

*Counsel for Indirect Reseller Plaintiffs-Appellees*

## SIGNATURE ATTESTATION PURSUANT TO CIRCUIT RULE 25-5

I, Betsy C. Manifold, hereby attest that I have obtained the concurrence of each of the other signatories to this document.

Dated: September 21, 2026

By: *s/ Betsy C. Manifold*
Betsy C. Manifold

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-2626

I am the attorney or self-represented party.

**This brief contains** 9770 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- ○ complies with the word limit of Cir. R. 32-1.
- ○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - ☐ it is a joint brief submitted by separately represented parties.
  - ☐ a party or parties are filing a single brief in response to multiple briefs.
  - ☐ a party or parties are filing a single brief in response to a longer joint brief.
- ○ complies with the length limit designated by court order dated ______.
- ◉ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Betsy C. Manifold **Date** Sept 21, 2026
*(use "s/[typed name]" to sign electronically-filed documents)*